The issue presented for review today before the court is whether the conduct of the Nevada Department of Corrections induced the appellant, my client, Donald Hixon, to file a rebuttal. by exhibiting conduct and making communications to him so inconsistent with their intent to enforce the right to require exhaustion of administrative remedies that the appellee, my client, Donald Hixon, excuse me, that the appellant, excuse me, the appellee waived their right to the exhaustion requirement under the PLRA and the Nevada equivalent AR 740. Specifically, Your Honor, I would like to begin by stating that the motions for summary judgment were filed by the Attorney General's office in advance of any meaningful discovery. When we had made multiple attempts to receive discovery from the Attorney General's office, their response was that a criminal investigation was underway, and ultimately the guard that shot my client was criminally indicted by a grand jury, and they refused to turn over any information relating to this particular case other than the administrative regulation 740. After these, the motion for summary judgment was filed in October. We responded in November. They responded to the Attorney General's office in January. Only until March of that year did we receive the discovery related to the case. The trial of the guard was over, and they provided multiple tapes and documents related to the conduct of the prison officials. Most importantly, Your Honors, I would like you to consider the fact that my client was presented with three separate levels of investigators. The first of those – Before we get into the details on that, this case presents, as you know from the court's prior order, a jurisdictional question. Yes. And I'll just put it on the table. I can't figure out a way to get around the jurisdictional question, because we don't have a final judgment as to everybody. And I haven't quite seen a solution to that unless you've had further thoughts on how the court might get around that, because it's not a choice on our part. Right. Understood. And in reviewing all the materials, it seems that it's pretty consistent in all circuits that exhaustion is a matter of abatement on the cases, so that failure to exhaust eliminates any possible action against any party. And that is what the Attorney General's office had submitted upon further research and review. It seems that failure to exhaust administrative remedies within the prison is, in fact, a matter of abatement and negates the matter entirely. Well, the issue is not the exhaustion. The issue is we don't have a final judgment on all the parties. And you're saying in relation to the individual officer, Paul Champion? Yeah. You have to have everybody that gets sued, you need to have an answer from the district court on everybody that's a final judgment before you can go up on appeal. And that's another interesting point. After perusing the judge's order line by line, he says the Title 1983 claim, Count 1, without referencing Count 1, is here by motion of summary judgment as granted. Then he says Count 2, because the State of Nevada is not, or NDOC is not an arm of the State of Nevada, or excuse me, is an arm of the State of Nevada, then in fact Count 2 is dismissed. Later, Judge Pro in Nevada states that the remaining Counts 3 through 12 are also dismissed as a result of Donald Hickson's failure to exhaust his requirements. Where does Mr. Chaffee come in? You know, it's not the Counts 1, 2, and then 3 through 12 are all dismissed, but the Federal judge does not reference Paul Chaffee by name. I mean, that's a question, because everything that the judge says has to do with, you know, the NDOC and other items. So that's why I think the court issued the order is to see if there was any illumination we were missing in the record as to what happens to Mr. Chaffee. And it's a catch-22, because as I read it, the judge granted motion, the motion for summary judgment on counts, on all counts. So if I have a complaint with no counts left, I cannot proceed against Paul Chaffee. It is final. And I understand the court's concern that the judge never references Paul Chaffee, only the counts. And if I may, the Counts 3 through 12 are State claims against Paul Chaffee individually and as an agent of the Nevada Department of Corrections. And that's not referenced by the judge, only the dismissal of the counts. Well, I guess in reading his decision, that's where I'm left with, you know, nary a word about Mr. Chaffee. Yeah. And he falls in a different category. I mean, he is a person. Yeah. He is an individual, right? He is an individual. He is a person. Correct. There might be a claim against him. So I am left with a complaint with no counts, because they were all granted summary judgment. Mm-hmm. And viewing it as a matter of abatement that the entire case is negated as a failure of Donald Hickson to exhaust his administrative remedies through the prison system itself, through the grievance process, then we can ---- What was the argument made as to why Mr. Chaffee, why there's no claim against him? There is. Well, I mean, I know you think there's a claim, because you brought it, and he's a person, and so he doesn't have a big jurisdictional hurdle in principle. But what was the argument, or was there any argument made about Mr. Chaffee? There wasn't, and it seems that the motion for summary judgment initially filed by the Attorney General's office was on behalf of their client, the Nevada Department of Corrections, and subsequently I've been informed that they're representing Paul Chaffee, too. I know, but I don't think you can kind of bootstrap. In other words, if you read the motion and then you read the order, it all relates to the Nevada Department of Corrections. That's true. It doesn't relate to Mr. Chaffee. So maybe, and we'll have to just ask Nevada, you know, maybe Mr. Chaffee, maybe we have no jurisdiction, but Mr. Chaffee's, you know, he certainly is still in there for the district court to figure out what to do with one way or the other before this case comes on appeal. So I don't know if you have anything more to add on jurisdiction. And if not, maybe you want to save and we'll hear from Nevada. Okay. Thank you. Thank you, Your Honor. So here's the big question. Where is Mr. Chaffee? Well, now the Attorney General's Office, I'm sorry, Gil Davis on behalf of the State of Nevada, we do represent Mr. Chaffee now. Initially, we did not represent Officer Chaffee. When you say now, you mean today? Today. Today, he's currently my president. Why? Him in the trial court. I did start in. I don't mean you. But I mean the office. The office. We did in February of 2009, we began our representation of Mr. Chaffee. His criminal trial was in November of 2008. And there was an issue because the Attorney General's Office criminally prosecuted him in a different division. Obviously, it was the Chinese walls that we all learned in law school. Additionally, there was another department in my office that was doing his personnel action because he was terminated. So there were three different AGs on the different cases. And we initially did not represent Officer Chaffee when the civil rights complaint was filed. And, again, we didn't start representing him until February of 2009 after he was acquitted on the criminal matter. Is there still an action pending that was not decided against Mr. Chaffee? He still has a termination case going, Your Honor, in state court. But, I mean, the criminal action is done. He was acquitted. That's complete. There's an action. Is that the state court part of this claim? Well, the state court actions is to appeal from his administrative hearing regarding his termination. There's no other action that I'm aware of with Mr. Chaffee other than that that's occurring. Well, but what happened is, does Mr. Segesi's client still have a claim against Mr. Chaffee in the civil rights case? No, Your Honor, because the AG's office, in my opinion, when we raised it, we said that it really is a matter of complete abatement, the fact that he failed to exhaust the administrative remedies. In this case, it doesn't really matter, because there's a case law out there that says when, let's say there's unserved defendants in a matter, and the fact that there was a motion to dismiss based on failure to exhaust administrative remedies, it applies to the unserved defendants as well. And the motion in this case was not brought on behalf of Officer Chaffee at the time because we did not represent him. But if you didn't represent him, then I don't see how the court – was he unrepresented and the court made a judgment against him? I mean, you didn't represent him. No, he was representing himself at the time. Right. But, I mean, it still does – he didn't exhaust his administrative remedies, inmate Hickson, therefore he could never come into court either. So what – he didn't argue – did he – did he argue that? Did he file a motion? You mean Mr. Chaffee? Yes. No, Your Honor. Okay. Are you maintaining this Court has jurisdiction? Yes, Your Honor. In this case? And that Mr. Chaffee has nothing to do with this case anymore? Correct, because all of the claims, as Mr. Sacchese said, are gone or dismissed because he – inmate Hickson failed to exhaust his administrative remedies. Then why are you representing him now? Because I started representing prior to the district court dismissing the entire action. So you think it was a final judgment of the district court judge? Yes, Your Honor. I still don't understand, then, how you are still representing Mr. Chaffee. I'm still representing the Nevada Department of Corrections as well, just because Mr. Chaffee was not part of the motion. He's still now my client. All right. Because this goes to the question of our jurisdiction. Was there a final judgment? And when the district court judge did not mention Mr. Chaffee, it seemed that he was floating out there. And evidently, because he didn't exhaust his administrative remedies, everything was held in abatement. Is that what you're saying? Yes, Your Honor. And therefore, he's no longer part of this case, and therefore, we have jurisdiction. Well, I mean, the whole matter is – abatement applies to everything. I mean, NDOC, Officer Chaffee. I mean, it's concluded. There can be no claims on behalf of inmate Hickson because he didn't exhaust his administrative remedies. He can't get to court. I understand your position. Thank you. Okay. Okay. I don't recall. Was there a – in this action, was there also a claim of the violation of the state court procedures? I'm not sure. Lots of times, there will be incorporated in the federal action a supplemental action for the violation of state law. Was that incorporated in this one? Well, he filed a motion – the complaint was for assault, battery, potential affliction, emotional distress, negligence, affliction, emotional distress, negligence, respondent superior, negligence, supervision and training, failure to provide supervision, and conversion into civil conspiracy. I mean, those were the state law claims in the matter that were incorporated into the complaint. So were those resolved by the judgment of the court? Yes, Your Honor. The court specifically resolved all state court claims in this issue on failure to exhaust under NRS statutes, because essentially there's the same window. You have six months to file your claim. And inmate Hickson did not. He did not file the rules for federal or for state exhaustion remedies. So in our opinion, the case really no longer exists because he could never come into court. And I also believe that this case is very, very similar to Pinero v. The City of North Las Vegas. In that case, the court held that a prisoner did not exhaust his administrative remedies by participating in the internal affairs investigation of the officer who allegedly beat him. And this case is very factually similar because Hickson participated in the investigation. And in both instances, neither inmate initiated and or exhausted his administrative remedies. Hickson alleges that because he was participating in the investigation, he didn't      supposedly on notice regarding the incident, the shooting. The purpose of the grievance process is really to quell inmate lawsuits and eliminate unwarranted federal court interference with the administration regulation of prisons. By inmate Hickson not grieving the incident to resolve this issue prior to filing another federal action, he took that ability away from the Nevada Department of Corrections. Hickson also further alleged that because the AG's office took over the investigation that Hickson did not have to file a grievance because that the attorney general's investigator told him that the AG's office is taking this over from the IG's office, which is part of Nevada Department of Corrections. And therefore, that he should only be speaking to the attorney general's office regarding the investigation. But what happens between Hickson and the attorney general's investigator is the fact that they're just discussing the fact that now the AG's office is investigating it. The AG's office never tells him not to file a grievance, never tells him not to exhaust his administrative remedies. The administrative remedies were still available to inmate Hickson. And if you look at the AR 740, which discusses how grievances are supposed to be done, it notes that under AR 740.02.1.4.2.4, that all allegations of staff misconduct move forward to the inspector general's office for review. And it notes that the informal response will reflect that this action is being initiated, which is the investigation, and that all time frames are suspended until a disposition is received from the inspector general's office. And that AR notes the fact that you're going to have to go through the grievance process as the inmate to protect your rights to sue, and that there's an investigation going on. There's two separate actions here. The fact that an investigation occurred does not mean that inmate Hickson does not have to exhaust his administrative remedies. He still must exhaust his administrative remedies in order to get into federal court, in order to pursue his state law claims as well. And I think that Panera was very clear in the fact that an inmate must exhaust his administrative remedies, even if he participates in the investigation. I think that makes a clear law. It doesn't make it fuzzy if you have a case where it's a slippery slope. If the court has to investigate each time and there's an internal investigation by the inspector general's office or the AG's office, what was said by the investigator, is there any regarding having to exhaust the administrative remedies. And I would think that the court would go, has jurisdiction, and should follow the Panera ruling. Thank you. So even if we were to read the judgment which says to enter in favor of Nevada Department of Corrections, and it says nothing about Mr. Chaffee and it were to go back, you'd still have this exhaustion problem, correct? Yes. And that's what I was prepared to spend both of my time on. Okay. Why don't you address that? The exception to the exhaustion requirement is clear, and that is when affirmative conduct on behalf of the prison officials or anyone involved with this particular case, or a case when their affirmative conduct leads the individual inmate to believe that the remedy was not available or made it more difficult to utilize that remedy, is considered unavailable, and as a result of its unavailability, the prison cannot later say he failed to exhaust his administrative remedies. What case are you referring to? That's Brown v. Croke, where the prison was investigating a similar type of case, and in Brown v. Croke, simply a summary is that the investigator told the inmate to wait until the main investigation was over, and then file his grievance. Well, by that time, the grievance process period had closed, so he could no longer file a grievance. And then later the state said, hey, you didn't file a grievance, and he said you told me to wait. In this particular case, it's almost exact. I would say it's even stronger than Brown v. Croke, because the attorney general's office came in and spoke to my client three weeks after this shooting. It was a shotgun shooting, and my client was in intensive care for three weeks. As soon as he was sent back to the facility, he met with this attorney general inspector. Now, there's three levels. The associate warden, Baca, investigates. The second level is the IG's office, the inspector general's office. These are inside the prison. And then the third level is the attorney general's office, and the inspector from the attorney general's office came in. We were provided the tapes after the summary judgment motion was granted and made it very clear that this is no longer in the province of the prison. This particular matter, because it's a criminal case and we believe you've been criminally violated, we're going to have this handled by an outside entity, i.e., the attorney general's office. Here's my card. I am Inspector Anthony Ruggiero, and you're going to be talking to me. Who else did you talk to? This is outside of the prison. My client is a 21-year-old boy who was a passenger in a stolen vehicle and ultimately was his second day in jail. Then he was shot in prison, and then he was shot. And he is without counsel. He is without any understanding of the process. And he believed that he would be obstructing justice or interfering with an official investigation if he went against the orders of the attorney general's inspector who said this is no longer in the province of the prison. It's outside the prison. As a matter of fact, it ended up turning into an indictment. And this client of mine was handheld through the whole process with the attorney general's office regarding testifying at the grand jury and multiple statements, and they were a team. Seven months after this incident, which is just a month after this window closed for the grievance process, he contacted me and said, I need someone to help me in my interests. I don't know what's going on. They don't want me talking to anybody, but I need help. And when I looked into it, I realized it was a month too late, but I immediately filed this action. Now the attorney general's office, who prosecuted this guard for shooting my client once to protect this guard after they prosecuted him and say that because my client failed to go through the grievance process, the administrative grievance process, which is a $500 recovery at each level, my client's medical bills were $69,000. He was helicoptered in intensive care for three weeks, lost most of his internal organs, half of his internal organs. Because he didn't go through that particular process, they want to now say he's stopped from suing at all. Okay. I think we have your argument in mind. Okay. Both exhaustion from both counsels as well as the jurisdictional argument. So thank you for your argument. Thank you. Thank both of you. Hickson v. Nevada Department of Corrections is submitted.
judges: Hug, Nelson D. W., McKeown